IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JON COURTER, | ) | CIVIL NO. 11-00736 LEK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JEFFREY KAROLLE, In Personam, | ) | |
| and S/V TRADITION, O.N. | ) | |
| 227332, her engines, | ) | |
| machinery, furniture, sails, | ) | |
| rigging and appurtenances, | ) | |
| In. Rem., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER**

This matter came on before the Court for a bench trial from March 19 to 21, 2013.  Bryan Y. Y. Ho, Esq., appeared on behalf of Plaintiff/Counterclaim Defendant Jon Courter ("Courter"), who was present for the proceedings.  Michael R. Marsh, Esq., appeared on behalf of Defendant/Counterclaim Plaintiff Jeffrey Karolle ("Karolle"), who was also present for the proceedings.  The Court has: considered the pleadings filed herein and the testimony at trial; evaluated the credibility of the witnesses; examined the exhibits admitted into evidence; and considered the arguments and representations of counsel.  Pursuant to Federal Rule of Civil Procedure 52, the Court hereby makes the following Findings of Fact and Conclusions of Law and Order, and FINDS in favor of Courter.  Any finding of fact that

should more properly be deemed a conclusion of law and any conclusion of law that should more properly be deemed a finding of fact shall be so construed.

## BACKGROUND

This action arises out of a dispute as to the ownership of in rem Defendant, the vessel TRADITION, O.N. 227332 ("Tradition"), a 1928 Alden schooner, United States Coast Guard ("USCG") documented, recreational sail boat measuring 53.6' x 14.3' x 7.6', 25 gross tons, 21 net tons. [Verified Complaint at ¶ 3; Verified Counterclaim at ¶ 3.] Courter alleges that he is the sole lawful owner of Tradition, that he agreed to sell the vessel to Karolle for $16,500 in January 2011, but that that agreement was voided by Karolle's inability to pay the purchase price. [Complaint at ¶¶ 8-12.] Karolle alleges that he is the rightful owner of Tradition; that he purchased Tradition in February 2010, and that he transferred title to Courter to hold in trust so that Karolle could keep Tradition in Slip Number 663 in the Ala Wai Harbor, which was held in Courter's name. [Verified Countercl. at ¶¶ 21-27.]

## I.   Findings of Fact

### A.   Courter and Karolle's Relationship and Prior Dealings

1.   Courter is fifty-two years old and a resident of the State of Washington. [Tr. Exh. 59.] Courter testified at trial that he is a USCG-licensed master, or captain. Courter

2

further testified that he has had no regular employment or reportable income since approximately 1989, and that he has been living off his savings since that time.

2.   Karolle testified at trial that he is fifty years old and a resident of the State of Hawai`i.

3.   Tradition is a 1928 Alden schooner, USCG-documented, recreational sail boat measuring 53.6' x 14.3' x 7.6', 25 gross tons, 21 net tons.  [Tr. Exh. 26.]

4.   Karolle testified at trial that he met Courter in or around 2004 when Karolle participated, as a paying guest, on a "chartered sail" operated by Courter.  Karolle further testified that, in 2005, the two were reacquainted at the Honolulu Club, where they were both members, and in 2007, Karolle began working for Courter as a volunteer crew member aboard the vessel Emerude II.  [Tr. Exh. 37.]

5.   Karolle further testified that he and Courter developed a personal relationship during 2006 and thereafter, that they often worked out together at the Honolulu Club, and that Courter agreed to serve as Karolle's mentor in pursuing his goal of purchasing his own sailing vessel.

6.   Courter testified at trial, on March 20, 2013, that he and Karolle did work out together for a time at the Honolulu Club, but that he never agreed to mentor Karolle.

7.    Karolle testified that Courter advised him in the purchase of his first vessel, Canefire, from Karen Fields-Poasa in April of 2009.  Pursuant to a notarized bill of sale for Canefire, dated April 6, 2009, Ms. Fields-Poasa sold Canefire to Karolle for a purchase price of $3,500.  Karolle held back $500 of the purchase price, and Ms. Fields-Poasa agreed to postpone transfer of title out of her name and into Karolle's name until Karolle had secured a slip in the Ala Wai Harbor in which he could keep Canefire.  [Tr. Exh. 38.]  Karolle testified that Courter advised him in negotiating this "slip deal" for Canefire.

8.    At trial, on March 20, 2013, Courter testified that he had no involvement whatsoever with Karolle's purchase of Canefire, or the associated "slip deal," and that he provided no assistance or guidance in connection with the terms of the purchase other than to advise Karolle not to purchase Canefire.

9.    Ms. Fields-Poasa testified at trial, on March 20, 2013, that she sold Karolle Canefire, and agreed that she would keep the boat in her name until Karolle got a slip for Canefire. It was Ms. Fields-Poasa's understanding that Karolle owned Canefire at the time the bill of sale was signed, and that Karolle was responsible for all slip fees and other costs associated with the maintenance of Canefire.  Ms. Fields-Poasa further testified that Courter did not participate in the negotiations or sale in any way.

4

10.   On or around the time of the sale of Canefire, Ms. Fields-Poasa executed a Certificate of Sale for Canefire indicating that Karolle was a joint owner of the vessel. Ms. Fields-Poasa testified that she executed this document so that Karolle could exercise control over the vessel and be the person who handled the day-to-day decisions and interactions with the USCG Division of Boating and Ocean Recreation ("DOBOR") and the Ala Wai Harbormaster with respect to Canefire.  [Tr. Exh. 39.]

11.   DOBOR issued Karolle Permit Number 011137 for a slip for Canefire on March 19, 2011.  [Tr. Exh. 45.]  Ms. Fields-Poasa testified that she signed title to Canefire over to Karolle thereafter.

B.   **Karolle's Initial Acquisition of Tradition**

12.   Karolle testified at trial that Courter notified him that Tradition was for sale in December of 2009.

13.   Courter testified at trial, on March 20, 2013, that he did not notify Karolle that Tradition was for sale, and that he first learned of the boat in early 2010 when Karolle told him that he had purchased it.

14.   Karolle testified at trial that, prior to purchasing Tradition, he entered into an agreement with Courter under which Courter would allow Karolle to keep Tradition in Courter's slip at the Ala Wai Harbor, and Karolle would pay all

expenses associated with Tradition while it was in Courter's slip.  Karolle stated that the parties agreed that Karolle would transfer title to Tradition to Courter's name to hold in trust until Karolle was granted an appropriate slip from DOBOR for Tradition.  Karolle testified that this agreement was not put in writing, and that there was no third party who was present or aware of it.

15.  Courter testified at trial that no such agreement existed, and that his only knowledge of Karolle's plan for Tradition was that Karolle would utilize a 120-day temporary permit to moor the boat.

16.  Archie Shelton sold Tradition to Karolle for a purchase price of $30,000 pursuant to a Vessel Purchase and Sale Agreement, dated January 28, 2010.  [Tr. Exh. 5.]

17.  Karolle filed the bill of sale for Tradition with the USCG National Vessel Documentation Center ("NVDC") on March 30, 2010.  [Tr. Exh. 7.]  Thereafter, NVDC issued a Certificate of Documentation dated April 15, 2009 showing Karolle as the owner of Tradition.  [Tr. Exh. 22.]

18.  Karolle testified at trial that, after purchasing Tradition, he kept the vessel in its existing slip in his name under a Temporary Mooring Permit for 120 days.  [Tr. Exh. 12.]

C.  **Transfer of Ownership from Karolle to Courter**

19.  Karolle testified at trial that, in or around

January of 2010, the parties discussed and reached an agreement under which Courter would allow Karolle to moor Tradition in Courter's slip while Karolle was waiting for his own slip. Karolle further testified that, on Courter's advice, Karolle agreed to transfer title of Tradition over to Courter in order to allow him to keep the vessel in Courter's slip.  Karolle testified that it was his belief that Courter would hold title in trust for him while Tradition was in Courter's slip, but that Karolle would continue to be the owner of the vessel, and would be responsible for paying all expenses associated with Tradition. Karolle testified further than he agreed to pay all expenses associated with the moorage, except that he would not pay the fee associated with a live-aboard permit.  Karolle stated that this agreement was never memorialized in writing.

20.  Courter testified at trial, on March 20, 2013, that he never reached such an agreement with Karolle.  Rather, Courter testified that Karolle told Courter he was having financial difficulties and asked Courter to loan him money. Courter testified further that he refused to loan Karolle money, but that Karolle then offered to sell him Tradition for $16,500.

21.  Courter testified that in May of 2010 he agreed to purchase Tradition from Karolle for $16,500.  Courter testified further that his agreement with Karolle to purchase Tradition included an oral agreement that Karolle would have an option to

repurchase the vessel for the same purchase price ($16,500), so long as Karolle continued to pay all expenses associated with Tradition, including any fees associated with a live-aboard permit. Courter stated that he told Karolle that he intended to immediately put Tradition up for sale.

22. The June and August 2011 issues of Wooden Boat Magazine contained advertisements for the sale of Tradition. [Tr. Exhs. 34, 35.] Karolle testified that he and Courter prepared the advertisements together, and that Courter's telephone number was listed on the advertisements. Karolle further testified that the two placed advertisements on Craigslist together as well. Courter testified at trial that he placed numerous advertisements on Craigslist for the sale of Tradition, with his most recent advertisements listing a purchase price of $2. [Tr. Exh. 99.]

23. Courter testified at trial, on March 21, 2013, that, in May or June of 2010, he withdrew $16,500 in cash from a secured lockbox and gave it to Karolle as payment for Tradition. He testified that there is no documentation of his withdrawal of the cash, that he did not request or receive a receipt from Karolle, and that he did not recall where the exchange took place. He further testified that no third person who knew of the payment.

24.   Karolle testified at trial that Courter never paid him any money in exchange for the transfer of title into Courter's name, nor was there an agreement that he would do so. Karolle further testified that he had over $60,000 in his bank account at the time, and was not having financial difficulties.

25.   Karolle testified at trial that on June 17, 2010, he transferred ownership of Tradition to Courter by signing the "Sale or Transfer of Vessel" portion of the back of the USCG Certificate of Documentation as the seller and indicating Courter as the purchaser before a notary public.  Karolle then filed the Certification of Documentation, along with a request for change of ownership, with the NVDC and paid all fees to effect the issuance of a new Certificate of Documentation with Courter listed as the owner of Tradition.  [Tr. Exh. 22 (Certificate of Documentation transferring title to Courter), Exh. 15 (Application for Initial Issue, Exchange, or Replacement of Certificate of Documentation; Redocumentation).]

26.   Thereafter, NVDC issued a new Certificate of Documentation, dated December 22, 2010, listing Courter as the "owner" and "managing owner" of Tradition.  [Tr. Exh. 26.]

D.   **The Parties' Subsequent Dealings**

27.   Karolle testified at trial that the parties agreed that, once the NVDC issued the new Certificate of Documentation in Courter's name, Courter would immediately sign the back of the

9

Certificate as the seller and give it to Karolle to hold as security for Courter's agreement to hold title in trust for Karolle.

28.   Courter testified at trial that, in January of 2011, Karolle told Courter that he wanted to exercise his option to repurchase Tradition, and suggested that they complete the purchase at Karolle's credit union.

29.   On January 19, 2011, Courter signed the reverse side of the Certificate of Documentation for Tradition in the "Sale or Transfer of Vessel" portion of the document as the seller before a notary public.  No purchaser was listed.  [Tr. Exh. 26.]

30.   Courter testified at trial, on March 20, 2013, that he never listed anyone as the purchaser on the Certificate of Documentation because Karolle failed to pay him the purchase price, and the sale was therefore cancelled.  Courter further testified that the signed Certificate of Documentation was returned to the vessel.

31.   Karolle testified at trial that no sale was contemplated on January 19, 2011, but, rather, that Courter signed the Certificate of Documentation and gave Karolle the notarized, signed document so that Karolle could transfer Tradition back into his own name, or to a third-party buyer, at any time.  Karolle testified that he kept the original, signed

10

Certificate of Documentation in his storage unit.

32.   Karolle and Courter both testified that Karolle payed all expenses associated with Tradition, including slip fees, from the time Karolle purchased Tradition from Archie Sheldon until May of 2011.

33.   Courter testified at trial that Karolle stopped paying slip fees in May of 2011, and that in October of 2011, after communications with Karolle, Courter concluded that Karolle's option to repurchase Tradition was terminated.

34.   Karolle testified at trial that he asked Courter several times throughout 2010 and 2011 for documentation regarding the payments made for the moorage of Tradition, specifically requesting an account statement from DOBOR setting forth all payments made for Tradition to date.  Courter stated he would provide such a statement, but never did so.  Karolle stated that, by his accounting, he paid a total of about $17,000 to Courter in slip-related charges during the period from June of 2010 to May of 2011.  Karolle further testified that, when he stopped payments in May of 2011, he believed he had already paid the slip fees for the year of 2011 in full.

35.   On September 22, 2011, Courter submitted to NVDC, via facsimile, an application to renew the December 22, 2010 Certificate of Documentation for Tradition.  [Tr. Exh. 30.]

11

36. NVDC issued a new Certificate of Documentation for Tradition, dated September 23, 2011, with Courter listed as the "owner" and "managing owner." [Tr. Exh. 31.]

37. Karolle testified at trial that he found out that Courter had been issued a new Certificate of Documentation after calling the NVDC in September of 2011. Karolle further testified that he believed Courter might attempt to sell Tradition "out from under him" using the new Certificate of Documentation. Karolle stated that, in light of this concern, he and his girlfriend moved onto Tradition in September of 2011.

38. Karolle made a Freedom of Information Request to the NVDC for documentation information on Tradition. On November 28, 2011, the NVDC sent Karolle the Tradition file; the file included a letter from Courter to the NVDC dated November 2, 2011, stating that Courter remained the sole owner of Tradition, and that he had contemplated a sale to Karolle but that the sale had been cancelled because Karolle failed to "fulfill his obligations as purchaser." [Tr. Exh. 74.] The letter further stated that Courter believed Karolle had "serious mental issues" and was concerned that Karolle might "fraudulently attempt to change or transfer ownership of the vessel to himself using the previous and now obsolete edition of the Certificate of Documentation." [Id.]

39.   On November 22, 2011, Karolle filled in his name and address as the purchaser on the December 22, 2010 Certificate of Deposit that had been signed by Courter and sent the document via facsimile to the NVDC on November 23, 2011, requesting transfer of ownership of Tradition into his name.   [Tr. Exhs. 32 (signed Certificate of Documentation with Karolle listed as purchaser), 33 (Application for Initial Issue, Exchange, or Replacement of Certificate of Documentation; Redocumentation dated 11/22/11).]

40.   At trial Courter testified that the NVDC told him over the telephone that Karolle's November 2011 request for a new Certificate of Documentation invalidated the existing Certificate of Documentation in Courter's name, dated September 21, 2011, and clouded the title to Tradition.   Courter testified that the NVDC stated that it would not take any action to resolve legal ownership of Tradition until the dispute was resolved by the parties or in court.

41.   Karolle testified at trial that Courter caused him to be evicted from Tradition on or about January 25, 2012, and that Courter filed a Petition for Ex Parte Temporary Restraining Order and for Injunction Against Harassment Pursuant to Haw. Rev. Stat. § 604-10.5 in the District Court of the First Circuit, State of Hawai`i, against Karolle which prevents Karolle from returning to Tradition or contacting Courter.

13

42.   Jennifer Yoon, Karolle's girlfriend who also lived on Tradition, testified at trial on March 21, 2013 that she and Karolle were evicted from Tradition, that their possessions were removed from the boat, and that they lost certain possessions in the process.

43.   Courter filed his Verified Complaint for Declaratory Relief in this action on December 7, 2011, [dkt. no. 1,] and Karolle filed his Amended Answer, Verified Cross-Claim against Tradition, and Verified Counterclaim against Courter on April 9, 2012 [dkt. no. 9].   Courter testified at trial that he filed his Verified Complaint for Declaratory Relief in order to resolve the dispute and enable the NVDC to issue an unclouded Certificate of Documentation.   Karolle testified at trial that he wished to resume the use and enjoyment of Tradition and to establish his ownership of Tradition.

## II.   Conclusions of Law

### A.   Courter's Verified Complaint for Declaratory Relief and Karolle's Verified Cross-Claim Against Tradition, In Rem

1.   Courter's Verified Complaint and Karolle's Verified Cross-Claim set forth petitory actions for declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202; Supplemental Admiralty Rule D (Possessory, Petitory and Partition Actions) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Admiralty Rules"); and Rule 57 of the Federal

14

Rules of Civil Procedure.

2.    An actual justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201 regarding legal ownership of the in rem Defendant, Tradition.

3.    Jurisdiction over the action is properly vested in this Court.  See 28 U.S.C. §§ 1333, 2201, 2202; Fed. R. Civ. P. Supp. R. Adm. & Mar. Claims, Rule D (1999).

4.    This Court has jurisdiction over Tradition pursuant to Rule D of the Supplemental Admiralty Rules, as Courter effected arrest of the vessel pursuant to a Warrant for Arrest of Vessel served on Tradition on March 15, 2013.  [Dkt. nos. 54, 58;] see Fed. R. Civ. P. Supp. R. Adm. & Mar. Claims, Rule D.

5.    Venue is proper pursuant to 28 U.S.C. § 1391 because all of the events or omissions giving rise to Courter's Verified Complaint and Karolle's Verified Cross-Claim occurred within the State of Hawai`i.

6.    Courter has the burden of proof of demonstrating by a preponderance of the evidence that he is entitled to the declaratory relief requested in the Verified Complaint, and Karolle has the burden of proof of demonstrating by a preponderance of the evidence that he is entitled to the declaratory relief requested in the Verified Cross-Claim.

7.   Rule D of the Supplemental Admiralty Rules authorizes the commencement of an _in rem_ action to assert legal title to a vessel or to remove a cloud upon a vessel's title. Under Rule D, Supplement R, the party bringing suit must assert that he has legal title to the vessel.  Matsuda v. Wada, 128 F. Supp. 2d 659, 669 (D. Hawai`i 2000).

8.   It is undisputed, and the documentary evidence at trial established, that Karolle knowingly and voluntarily signed his name as seller and listed Courter's name as purchaser on the reverse side of the Certificate of Documentation for Tradition in the "Sale or Transfer of Vessel" section of the document before a notary public on June 17, 2010.  [Tr. Exh. 22.]

9.   It is undisputed, and the documentary evidence at trial established, that Karolle then sent a copy of the executed Certificate of Documentation to the USCG NVDC for recordation on September 16, 2010.  Thereafter, the NVDC issued a new Certificate of Documentation, dated December 22, 2010, listing Courter as the "owner" and "managing owner" of Tradition.  [Tr. Exh. 26.]

10.   Pursuant to 46 U.S.C. § 31321(a)(2), from the time the Certificate of Documentation with the "Sale or Transfer of Vessel" portion filled out was filed with the NVDC, it was valid proof of ownership in Courter's name against all claims as to the ownership of Tradition.

16

11.   The Court therefore concludes that, when the signed Certificate of Documentation was filed with the NVDC, title to Tradition was transferred to Courter.  See 46 U.S.C. § 31321(a)(2).

12.   It is undisputed, and the documentary evidence at trial established, that Courter signed, as seller, the "Sale or Transfer of Vessel" portion of the December 22, 2010 Certificate of Documentation before a notary public on January 19, 2011. [Tr. Exh. 26.]

13.   It is undisputed, and the documentary evidence at trial established, that no purchaser was listed on the "Sale or Transfer of Vessel" portion of the Certificate of Documentation, and the document was not sent to the NVDC for recordation, at the time Courter signed the back as seller on January 19, 2011.  [Tr. Exh. 26.]

14.   Because no purchaser was listed on the Certificate of Documentation, and because the signed Certificate was never filed with the NVDC, the Court concludes that title to Tradition did not transfer when Courter signed the back of the December 22, 2010 Certificate of Documentation on January 19, 2011.

15.   The Court therefore concludes that the documentary evidence produced at trial established by a preponderance of the evidence that Courter is the sole owner of Tradition and that he has legal title to the vessel.

17

## B.   <u>Karolle's Verified Counterclaim Against Courter</u>

1.   Karolle's Verified Counterclaim sets forth a claim for declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202; Rule D of the Supplementary Rules of Admiralty; and Rule 57 of the Federal Rules of Civil Procedure.

2.   Karolle's Verified Counterclaim also sets forth contract and tort claims.  In any civil action over which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  28 U.S.C. § 1367(a).

3.   Jurisdiction over the claims in Karolle's Verified Counterclaim is properly vested in this Court.  <u>See</u> 28 U.S.C. §§ 1333, 1367(a), 2201, 2202; Fed. R. Civ. P. Supp. R. Adm. & Mar. Claims, Rule D.

4.   Venue is proper pursuant to 28 U.S.C. § 1391 because all of the events or omissions giving rise to Karolle's Verified Counterclaim occurred within the State of Hawai`i.

*Misrepresentation (Count I)*

5.   The Court interprets Count I as a claim for negligent misrepresentation.

6.    Karolle has the burden of proof of showing by a preponderance of the evidence that: "(1) false information [was] supplied [by Courter] as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information [was] supplied [(Courter)] suffered the loss; and (3) [Courter] relie[d] upon the misrepresentation." See Blair v. Ing, 95 Hawai`i 247, 269, 21 P.3d 452, 474 (2001) (citing Kohala Agriculture v. Deloitte & Touche, 86 Hawai`i 301, 323, 949 P.2d 141, 163 (Ct. App. 1997); Restatement (Second) of Torts § 552).

7.    It is a "basic principle that a negligence action lies only where there is a duty owed by the defendant to the plaintiff." Birmingham v. Fodor's Travel Publ'ns, Inc., 73 Haw. 359, 366, 833 P.2d 70, 74 (1992); see also Kaiser v. First Hawaiian Bank, 30 F. Supp. 2d 1255, 1263-64 (D. Hawai`i 1997); Combs v. Case Bigelow & Lombardi, No. 28773, 2010 WL 370275, at *7 (Hawai`i Ct. App. Jan. 27, 2010).

8.    Karolle testified at trial that Courter and Karolle had a close friendship, that they worked out together at the Honolulu Club, and that Courter agreed to act as Karolle's mentor in pursuing his goal of purchasing his own sailing vessel.

9.    Under Hawaii law, a duty may only be imposed where there is a "special relationship" between the parties. See Pulawa v. GTE Hawaiian Tel., 112 Hawai`i 3, 13, 143 P.3d 1205,

19

1214 (2006); <u>Blair</u>, 95 Hawai`i at 260, 21 P.3d at 465.

10.   The Court concludes as a matter of law that Karolle has failed to demonstrate by a preponderance of the evidence that Courter and Karolle had a "special relationship" such that Courter owed Karolle a duty.  <u>See</u> <u>Blair</u>, 95 Hawai`i at 260, 21 P.3d at 465.

**Fraud (Count II)**

11.   A party claiming fraud must establish, by clear and convincing evidence, the following elements: (1) false representations were made by the defendant, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of the plaintiff's reliance on the false representations, and (4) the plaintiff relied on the false representations to his detriment.  <u>Combs</u>, 2010 WL 370275, at *13; <u>Joy A. McElroy, M.D., Inc. v. Maryl Group, Inc.</u>, 107 Hawai`i 423, 432-33, 114 P.3d 929, 939-40 (Ct. App. 2005); <u>Shoppe v. Gucci Am., Inc.</u>, 94 Hawai`i 368, 386, 14 P.3d 1049, 1067 (2000); <u>TSA Int'l, Ltd. v. Shimizu Corp.</u>, 92 Hawai`i 243, 255, 990 P.2d 713, 725 (1999); <u>Reassure Am. Life Ins. Co. v. Rogers</u>, 248 F. Supp. 2d 974, 981 (D. Hawai`i 2003).

12.   To be actionable, the alleged false representation must relate to a past or existing material fact and not the occurrence of a future event; a claim for fraud cannot be predicated on statements that are promissory in nature.  <u>Shoppe</u>,

94 Hawai`i at 386, 14 P.3d at 1067 (citing <u>Stahl v. Balsara</u>, 60 Haw. 144, 149, 587 P.2d 1210, 1214 (1978)).

13.   Karolle testified at trial that Courter falsely represented that he would hold title to Tradition in trust, that Courter and Karolle had an understanding that Karolle would remain the actual owner of Tradition and pay all expenses associated with the vessel, and that Courter signed the back of the December 22, 2010 Certificate of Documentation in order to provide Karolle with security for this agreement.  Karolle testified further that Karolle relied upon Courter's alleged false representations to his detriment, and that, as a result, Karolle has lost the use and enjoyment of Tradition.

14.   Courter testified at trial that no such agreement existed, and that in May or June of 2010 he agreed to and did purchase Tradition from Karolle for $16,500.

15.   The Court concludes that Karolle has failed to demonstrate by a preponderance of the evidence that Karolle's version of the events occurred, and that Courter falsely represented that he would hold title to Tradition in trust for Karolle.

16.   The Court further concludes that Karolle's claim for fraud must fail as a matter of law because the false statements forming the basis of the claim (i.e., that Courter promised to hold title to Tradition in name only, and to allow

Karolle to transfer title back to himself whenever he wished) are promissory in nature and, therefore, insufficient to support a claim for fraud.  See Shoppe, 94 Hawai`i at 386, 14 P.3d at 1067.

**Breach of Fiduciary Duty (Count III)**

17.   To prevail on Count III, Karolle must prove by a preponderance of the evidence that Courter breached a fiduciary duty.

18.   In Hawai`i, a "fiduciary relation exists between parties where there is a relation of trust and confidence between them, that is, where confidence is reposed by one party and the trust accepted by the other."  Kaiser, 30 F. Supp. 2d at 1265 (citing Meheula v. Hausten, 29 Haw. 304, 314 (1926)).

19.   Friendship or admiration for another generally does not create the type of relationship of trust required to give rise to a fiduciary duty.  See Hawkins v. First Horizon Home Loans, Civ. No. S-10-1876 FCD/GGH, 2010 WL 4823808, at *11 (E.D. Cal. Nov. 22, 2010).

20.   Karolle testified that Courter and Karolle had a close friendship, that they worked out together at the Honolulu Club, and that Courter agreed to act as Karolle's mentor in pursuing his goal of purchasing his own sailing vessel.

21.   Courter testified that he never agreed to enter into a mentoring relationship with Karolle.

22.   The Court concludes that Karolle has failed to

establish by a preponderance of the evidence that a relationship of trust and confidence existed between him and Courter that gave rise to a fiduciary duty.  Even if Karolle's version of the events is true, a close friendship is simply insufficient for a finding of a fiduciary duty.

***Conversation (Count IV)***

      23.  The common law tort claim of conversion involves "wrongful dominion over the property of another."  <u>Matsuda v. Wada</u>, 101 F. Supp. 2d 1315, 1321 (D. Hawai`i 1999).

      24.  Karolle must demonstrate by a preponderance of the evidence: "(1) A taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand." <u>See</u> <u>Sung v. Hamilton</u>, 710 F. Supp. 2d 1036, 1043-44 (D. Hawai`i 2010); <u>Tsuru v. Bayer</u>, 25 Haw. 693, 1920 WL 830, at *2 (Haw. Terr. 1920).

      25.  For the reasons set forth above, in Section II.A, the Court concludes that Courter was the lawful owner of Tradition at the time the alleged conversation took place.

      26.  The Court therefore concludes that Karolle failed to show by a preponderance of the evidence that he held ownership of Tradition at the time he alleges that Courter allegedly took wrongful dominion over the vessel.

27.  The Court therefore concludes that Karolle has failed to prove his claim for conversion by a preponderance of the evidence.

**_Breach of Contract (Count V)_**

28.  Karolle claims that Courter breached an alleged oral agreement between the two that Courter would hold title to Tradition in trust for Karolle, and allow Karolle to transfer title to the vessel back to himself at any time.

29.  For Karolle to demonstrate that the alleged oral contract is enforceable, he must demonstrate by a preponderance of the evidence that there was an offer, acceptance, and consideration.  Consideration is a necessary element to the enforceability of an oral contract.  See Young v. Allstate Ins. Co., 119 Hawai`i 403, 427-28, 198 P.3d 666, 690-91 (2008); Stanford Carr Dev. Corp. v. Unity House, Inc., 111 Hawai`i 286, 141 P.3d 459, 476 (2006).

30.  Consideration is defined as a bargained-for exchange whereby the promisor receives some benefit or the promisee suffers a detriment.  Douglass v. Pflueger Hawaii, Inc., 110 Hawai`i 520, 534, 135 P.3d 129, 143 (2006).  "A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."  Restatement (Second) of Contracts § 71(2).  "The performance may consist of (a) an act other than a

24

promise, or (b) a forbearance, or (c) the creation, modification, or destruction of a legal relation." Id. § 71(3); see also Young v. Allstate Ins. Co., 119 Hawai`i, 403, 428, 198 P.3d 666, 691 (2008).

31.   Karolle testified at trial that he did not pay Courter any money in exchange for the commitment Courter allegedly undertook to hold title to Tradition in trust and allow Karolle to keep Tradition in Courter's slip.  Further, Karolle has neither claimed nor demonstrated that he gave Courter any other good and valuable consideration in exchange for Courter's promises.

32.   The Court therefore concludes that Karolle has failed to show by a preponderance of the evidence that an enforceable oral contract existed between the parties.

**Breach of Implied Covenant of Good Faith and Fair Dealing (Count VI)**

33.   The Court interprets Karolle's Count VI as an attempt to allege a claim for the tort of bad faith.  See, e.g., Phillips v. Bank of Am., Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *5 (D. Hawai`i Jan. 21, 2011) (citing Best Place v. Penn Am. Ins. Co., 82 Hawai`i 120, 128, 920 P.2d 334, 342 (1996)).

34.   While commercial contracts generally involve an obligation of good faith in their performance and enforcement, this district court has made it clear that the obligation does

not give rise to an independent cause of action outside the insurance contract context.  See Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A., 459 F. Supp. 2d 1028, 1037–38 (D. Hawai`i 2006).

35.  The Court therefore finds that, as a matter of law, Karolle cannot maintain his claim for breach of the implied covenant of good faith and fair dealing as an independent cause of action.

36.  To the extent Karolle alleges that the parties had a contractual agreement and that the law directs that every contract contains an implied covenant of good faith and fair dealing, for the reasons stated above, the Court finds that Karolle has failed to establish that a binding oral contract existed between the parties.

37.  The Court therefore concludes that Karolle has failed to meet his burden as to Count VI.

**_Declaratory Relief (Count VII)_**

38.  The Court's judgment in favor of Courter on his Verified Complaint for Declaratory Relief is fully dispositive of the declaratory relief sought under Count VII of Karolle's Verified Counterclaim.

39.  For the reasons stated above in support of the Court's finding in favor of Courter on his Verified Complaint, the Court concludes that Karolle is not entitled to declaratory

relief.

### *Accounting (Count VIII)*

40.   Karolle voluntarily withdrew Count VIII of the Verified Counterclaim in his Post Trial Brief.  [Dkt. no. 62 (Karolle's Post Trial Brief), at 37.]  The Court therefore need not address that claim.

### **Punitive Damages**

41.   Karolle's Counterclaim asks the Court to grant punitive damages in connection with Counts I through VI.

42.   Under Hawai`i law, punitive damages are not recoverable for an alleged breach of contract.  Further, punitive damages are not recoverable absent conduct that: (1) violates a duty that is independently recognized by principles of tort law; and (2) transcends the breach of the contract.  McElroy, 107 Hawai`i at 437, 114 P.3d at 944; Francis v. Lee Enters., Inc., 89 Hawai`i 234, 242, 971 P.2d 707, 715 (1999).

43.   In order to recover punitive damages, Karolle must establish by clear and convincing evidence that Courter acted wantonly, oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or entire want of care sufficient to raise the presumption of conscious indifference to consequences.  See Ass'n of Apartment Owners of Newtown Meadows v. Venture 15, Inc., 115 Hawai`i 232, 297-98, 167

27

P.3d 225, 290-91 (2007).

44.   Because, under Hawai`i law, punitive damages can
only be awarded in connection with tort claims, the Court
concludes as a matter of law that Karolle's claim for punitive
damages for Courter's alleged breach of fiduciary duties (Count
III), breach of contract (Count V), and breach of implied
covenant of good faith and fair dealing (Count VI) fail to state
a claim on which relief can be granted.

45.   Further, because the Court has concluded, as
discussed above, that the evidence does not support a finding of
liability against Courter as to the remaining counts, the Court
concludes that Karolle has failed to demonstrate that Courter
acted wantonly, oppressively, or with such malice as to make
punitive damages appropriate.

## ORDER

AND NOW, following the conclusion of a bench trial in
this matter, and in accordance with the foregoing Findings of
Fact and Conclusions of Law, it is HEREBY ORDERED that judgment
shall enter in favor of Plaintiff/Counterclaim Defendant
Jon Courter as follows:

(1)   The Court finds in favor of Courter on his Verified
Complaint for Declaratory Action and finds that Courter is the
sole lawful owner of TRADITION, O.N. 227332;

(2)   The Court finds in favor of Courter against Karolle on

all counts in the Verified Counterclaim;

(3)   The Court finds against Karolle on his Cross-Claim against TRADITION, O.N. 227332, in rem; and

(4)   The Court awards Courter reasonable attorney's fees not to exceed twenty-five percent of the amount sued for, pursuant to Haw. Rev. Stat. § 607-14.   Courter shall submit a declaration regarding attorneys' fees by **June 26, 2013**.   Karolle will submit any objections challenging only the amount sought by **July 12, 2013**.   The matter will thereafter be referred to the magistrate judge for a determination of the amount of the award.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 6, 2013.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

JON COURTER V. JEFFREY KAROLLE; CIVIL NO. 11-00736 LEK-KSC;
FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER