IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOHN COURTER, | ) CIVIL NO. 11-00736 LEK-KSC |
| | ) |
| Plaintiff, | ) FINDINGS AND |
| | ) RECOMMENDATION REGARDING |
| vs. | ) ATTORNEYS' FEES |
| | ) |
| JEFFREY KAROLLE, <u>In</u> | ) |
| <u>Personam</u> and S/V TRADITION, | ) |
| O.N. 227332, her engines, | ) |
| machinery, furniture, | ) |
| sails, rigging and | ) |
| appurtenances, In Rem, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

<u>FINDINGS AND RECOMMENDATION REGARDING ATTORNEYS' FEES</u>

On June 6, 2013, U.S. District Judge Leslie E.
Kobayashi issued a Findings of Fact and Conclusions of
Law and Order ("FOFCOL").  Judgment entered that same
day.  In pertinent part, Judge Kobayashi held that:

> (1) The Court finds in favor of
> Courter on his Verified Complaint for
> Declaratory Action and finds that Courter
> is the sole lawful owner of TRADITION,
> O.N. 227332;

> (2) The Court finds in favor of
> Courter against Karolle on all counts in
> the Verified Counterclaim;

> (3) The Court finds against Karolle on
> his Cross-Claim against TRADITION, O.N.
> 227332, <u>in rem</u>; and

> (4) The Court awards Courter reasonable attorney's fees not to exceed twenty-five percent of the amount sued for, pursuant to Haw. Rev. Stat. § 607-14.[1]

FOFCOL at 28-29.  Judge Kobayashi directed Plaintiff Jon Courter ("Courter") to submit a declaration regarding attorneys' fees by June 26, 2013.  Id. at 29.

On June 26, 2013, Courter filed a Motion for Attorney's Fees, which this Court construed as a declaration.  Doc. No. 79.

On July 4, 2013, Defendant Jeffrey Karolle ("Karolle") filed a Motion for Reconsideration of the FOFCOL and Order Granting Courter's Motion in Limine Re Documents Produced by Defendant After Discovery Cutoff Dated March 19, 2013.  Doc. No. 80.

On July 12, 2013, Karolle filed his opposition to Courter's fee request.  Doc. No. 83.  That same day, this Court issued an Entering Order informing the parties that it would not issue a decision regarding the fee issue until Judge Kobayashi ruled on the Motion

---

[1]  The fee award pertained to Courter's success defending against Karolle's counterclaim.

for Reconsideration.  Doc. No. 84.  Judge Kobayashi

denied the Motion for Reconsideration on August 20,

2013.  Doc. No. 87.

DISCUSSION

Courter requests $94,940.00 in attorneys' fees

and $4,473.58 in tax.  Karolle argues that Courter's

request should be reduced for excessiveness,

administrative functions, legal research, and block

billing.

As already noted, Judge Kobayashi awarded

Courter reasonable attorney's fees not to exceed

twenty-five percent of the amount sued for, pursuant to

Hawaii Revised Statutes ("HRS") § 607-14.  Section 607-

14 states, in pertinent part:

> In all the courts, in all actions in the
> nature of assumpsit and in all actions on
> a promissory note or other contract in
> writing that provides for an attorney's
> fee, there shall be taxed as attorneys'
> fees, to be paid by the losing party and
> to be included in the sum for which
> execution may issue, a fee that the court
> determines to be reasonable; provided that
> the attorney representing the prevailing
> party shall submit to the court an
> affidavit stating the amount of time the
> attorney spent on the action and the

3

> amount of time the attorney is likely to
> spend to obtain a final written judgment,
> or, if the fee is not based on an hourly
> rate, the amount of the agreed upon fee.
> The court shall then tax attorneys' fees,
> which the court determines to be
> reasonable, to be paid by the losing
> party; provided that this amount shall not
> exceed twenty-five per cent of the
> judgment.

Haw. Rev. Stat. § 607-14.  Where, as here, Courter

obtained judgment with respect to Karolle's

Counterclaim as the prevailing Counterclaim Defendant,

the attorneys' fees are assessed based on the amount

sued for.  Id. ("The above fees provided for by this

section shall be assessed . . . upon the amount sued

for if the defendant obtains judgment.").  Haw. Rev.

Stat. § 607-14.

A.   Applicability of the 25% Cap

Courter posits that the 25% limitation on

attorneys' fees does not apply because it is impossible

to determine what the judgment would or might have been

had Karolle prevailed.  Courter additionally argues

that fairness mandates that the fee award be

commensurate with his significant efforts to defend

against the Counterclaim.  Karolle argues that the fee award should not exceed 25% of the amount sued for.

The Hawaii Supreme Court has held that the 25% limit "does not apply in cases that involved 'only an adjudication of rights in which no monetary liability is in issue.'"  DFS Group L.P. v. Paiea Props., 110 Hawai'i 217, 221, 131 P.3d 500, 504 (2006) (quoting Food Pantry, Ltd. v. Waikiki Business Plaza, Inc., 58 Haw. 606, 621, 575 P.2d 869, 880 (1978)); Blackburn v. Goettel-Blanton, 898 F.2d 95, 99 (9th Cir. 1990) (holding that the 25% ceiling does not apply when a pleading does not seek monetary relief; there, the defendant did not seek monetary relief in the counterclaim).  This is because HRS § 607-14 does not "arbitrarily deny an award of attorney's fees to a defendant merely because the circumstances of the lawsuit provide no 'legally cognizable basis upon which to make the mandatory 25% calculation.'"  Piedvache v. Knabusch, 88 Hawai'i 115, 119, 962 P.2d 374, 378 (1998).  The 25% limit may also be disregarded when "it

5

is impossible to determine what the judgment would or
might have been had the plaintiff prevailed (*e.g.*, in
declaratory judgment actions)."  Id.  When the amount
of the potential judgment is ascertainable, however,
the 25% cap should apply because the "legislature's
purpose was to place *some* limit on the amount of
attorney's fees that a prevailing party could
reasonably recover."  Id. at 119-20, 962 P.2d at 378-
79.

        Under the facts presented in Piedvache, the
court concluded that the 25% limit applied.  The
plaintiffs there did not allege specific damages, but
"prayed for 'damages in an amount to be proven at
trial,' which clearly indicated that 'monetary
liability was at issue.'"  Id. at 117, 120, 962 P.2d at
377, 379.  The district court entered judgment in favor
of the defendants.  Id. at 117, 962 P.2d at 377.
Notwithstanding the absence of a specific allegation of
damages, the Piedvache court determined that the 25%
cap should be applied to the district court's

6

$20,000.00 jurisdictional limit on damages because the plaintiffs' damages could not have exceeded $20,000.00. Id. at 120, 962 P.2d at 379.  The court reasoned:

> Just as it would be "inequitable" to deny a prevailing defendant any award of attorney's fees merely because no monetary amount has been sued for in his opponent's pleadings, it would be equally inequitable to award a prevailing defendant attorney's fees in an amount nearly twice that which the plaintiff could have recovered had he or she prevailed.  Where, as here, the maximum possible judgment is capable of determination, it should serve as a limit on the amount of the defendant's attorney's fees pursuant to HRS § 607-14.

Id.

According to Hawaii law then, when no monetary liability is at issue, the 25% limit does not apply. By contrast, when a specific monetary amount is not set out in the pleading, but monetary liability is at issue, and there is an ascertainable maximum judgment that the losing party might have received had it prevailed on its claim, the 25% limit applies.  Id. at 120, 962 P.2d at 379.

None of the foregoing cases are squarely on point with the facts in this case. Here, in the Counterclaim, Karolle sought general, special, and punitive damages in an amount to be determined at trial, which clearly indicates that monetary liability is at issue. However, in the absence of a specific allegation concerning the amount of damages sought, there is no monetary figure against which to apply the 25% limitation. Courter's counsel represents that Karolle did not introduce any evidence that articulated a specific dollar amount for the monetary damages that Karolle sought to recover from Courter. Decl. of Bryan Y.Y. Ho. ("Ho Decl.") at ¶ 24. Neither is there a jurisdictional maximum that could serve as the basis against which to apply the 25% cap.

Karolle submits that the relevant monetary figures are $2.00 or $16,500.00, and that Courter's fees should therefore be limited to either $0.50 or $4,125.00. Two dollars is the amount for which Courter

was willing to sell TRADITION.[2]  Sixteen thousand five hundred dollars is the amount that Courter agreed to accept from Karolle for the purchase of TRADITION. Neither of these amounts properly reflect what the monetary value of the judgment would or might have been had Karolle prevailed on his Counterclaim, as neither relate to the damages claims asserted in the Counterclaim.  The fee award is based on Courter's success with respect to the Counterclaim, not the Complaint.  Thus, any allegations in the Complaint or amounts of money that Courter would have accepted for TRADITION are irrelevant.

Courter asks the Court to apply the 25% cap against a figure between $600,002.00-$1,000,002.00. This range represents the estimated cost to completely restore TRADITION ($600,000.00-$1,000,000.00), plus the $2.00 offered sale amount for TRADITION.  Like the monetary amounts presented by Karolle, the figures

---

[2] Courter apparently posted an advertisement on Craigslist for TRADITION, offering to sell the vessel to a proper steward for $2.00.

advanced by Courter do not represent what the monetary value of the judgment would or might have been had Karolle prevailed on his Counterclaim.

Given these circumstances, it is impossible to determine what the judgment would or might have been. Piedvache, 88 Hawai'i at 119, 962 P.2d at 378. Consequently, the Court finds that under these specific facts, the 25% limit may be disregarded because it would be contrary to law to deny any fee award merely because there is no basis upon which to make the 25% calculation.  Moreover, had Judge Kobayashi, who has far greater familiarity with the claims in this action, believed that no fees were warranted, she could have simply declined to award fees.

B.   Calculation of Fees

Hawaii courts calculate reasonable attorneys' fees based on a method that is virtually identical to the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See DFS, 110 Hawai'i at 222, 131 P.3d at 505.  The court

10

must determine a reasonable fee by multiplying the number of hours reasonably expended by a reasonable hourly rate.  See id. at 222-23, 131 P.3d at 505-06. In addition, Hawaii courts may consider the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause; (2) whether the acceptance of employment in the particular case will preclude the lawyer's appearance for others in cases likely to arise out of the transaction, and in which there is a reasonable expectation that otherwise he would be employed, or will involve the loss of other employment while employed in the particular case or antagonisms with other clients; (3) the customary charges of the Bar for similar services; (4) the amount involved in the controversy and the benefits resulting to the client from the services; (5) the contingency or the certainty of the compensation; and (6) the character of the employment, whether casual or for an established and constant client.

Chun v. Bd. of Trs. of Employees' Ret. Sys. of Hawai'i, 106 Hawai'i 416, 435, 106 P.3d 339, 358 (2005) (citations omitted).  These factors, however, are merely guides; courts need not consider them in every

case.   See id.   In certain types of cases, some of
these factors may justify applying a multiplier to the
"lodestar" amount.   See Chun v. Bd. of Trs. of
Employees' Ret. Sys. of Hawai'i, 92 Hawai'i 432, 442,
992 P.2d 127, 137 (2000).

   1.   Reasonable Hourly Rate

      The Hawaii courts consider the reasonable
hourly rate in a manner virtually identical to the
traditional lodestar formulation and some courts have
considered federal law in determining a reasonable
hourly rate.   See, e.g., Reiche v. Ferrera, No. 24449,
2003 WL 139608, at *8 (Haw. Ct. App. Jan. 16, 2003)
("The reasonable hourly rate is that prevailing in the
community for similar work." (citing United States v.
Metro. Dist. Comm'n, 847 F.2d 12, 19 (1st Cir. 1988)).
The Court therefore finds that federal case law on the
determination of a reasonable hourly rate is
instructive in this case.   Courter requests a $200.00
hourly rate for his counsel, Bryan Ho, who has been a
licensed attorney for 28 years.   Ho Decl. at ¶ 6.

In determining the reasonableness of an hourly rate, the experience, skill, and reputation of the attorney requesting fees are taken into account.  See Webb v. Ada County, 285 F.3d 829, 840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should reflect the prevailing market rates in the community.  See id.; Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992), as amended on denial of reh'g, (1993) (noting that the rate awarded should reflect "the rates of attorneys practicing in the forum district").  It is the burden of the fee applicant to produce satisfactory evidence, in addition to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services.  See Jordan v. Multnomah County, 815 F.2d 1258, 1263 (9th Cir. 1987).

This Court is well aware of the prevailing rates in the community for similar services performed by attorneys of comparable experience, skill and reputation.  Based on this Court's knowledge of the

community's prevailing rates, the hourly rates
generally granted by the Court, the Court's familiarity
with this case, and Mr. Ho's submissions, this Court
finds that his $200.00 hourly rate is manifestly
reasonable.

　　2.　Reasonableness of Hours Expended

　　　　For the reasoning stated above, this Court
finds federal case instructive on the issue of the
reasonable number hours expended on the instant case.
Beyond establishing a reasonable hourly rate, a
prevailing party seeking attorneys' fees bears the
burden of proving that the fees and costs taxed are
associated with the relief requested and are reasonably
necessary to achieve the results obtained. See Tirona
v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632,
636 (D. Haw. 1993) (citations omitted). The court must
guard against awarding fees and costs which are
excessive, and must determine which fees and costs were
self-imposed and avoidable. Id. at 637 (citing INVST
Fin. Group v. Chem-Nuclear Sys., 815 F.2d 391, 404 (6th

14

Cir. 1987), <u>cert. denied</u>, 484 U.S. 927 (1987)).  Courts

have the "discretion to 'trim fat' from, or otherwise

reduce, the number of hours claimed to have been spent

on the case." <u>Soler v. G & U, Inc.</u>, 801 F. Supp. 1056,

1060 (S.D.N.Y. 1992) (citation omitted).  Time expended

on work deemed "excessive, redundant, or otherwise

unnecessary" shall not be compensated.  <u>See</u> <u>Gates</u>, 987

F.2d at 1399 (quoting <u>Hensley</u>, 461 U.S. at 433-34).

After careful review of Courter's submissions,

the Court finds that reductions for 1) clerical work;

2) insufficient descriptions; 3) block billing;

4) paralegal tasks; and 5) inconsistencies between time

entries and itemized tasks are necessary and

appropriate.

　　　a.　<u>Inconsistencies Between Time Entries and</u>
　　　　　<u>Itemized Tasks</u>

As an initial matter, the Court shall exclude

all time entries that differ from the cumulative total

of the itemized tasks in the description section for

that entry.  For example, Mr. Ho's February 26, 2013

time entry is 8 hours, but if one adds up the time

15

allocated to each task within that day's description, the cumulative total is 9.9 hours.[3]  Given the discrepancy in the foregoing entry, as well as a number of others, the Court is unable to verify the accuracy of said entries.  Courter, as the prevailing party, has the burden of establishing his entitlement to fees and providing the Court with sufficient documentation to support the request.  The inconsistency and confusion that has resulted from Courter's attempt to provide an itemized breakdown of daily charges in response to

---

[3]  Other entries include 11/14/13, 11/20/13, 12/4/13, 12/26/12, 12/27/12, 1/2/13, 1/3/13, 2/18/13, 2/19/13, 2/20/13, 2/21/13, 2/22/13, 2/23/13, 2/25/13, 2/27/13, 2/28/13, 3/1/13, 3/2/13, 3/3/13, 3/4/13, 3/5/13, 3/6/13, 3/7/13, 3/10/13, 3/22/13, 3/30/13, 4/1/13, 4/11/13, and 6/10/13.  The entries dated 3/25/13-3/29/13 are also inconsistent.  Mr. Ho initially claimed to have expended 2 hours on each of those days drafting written closing arguments.  Yet when he edited his time sheets, his description section added parentheticals indicating that he expended 6, 5, 5.3, 4.8, and 4.8 hours on each of the foregoing days, respectively.  The Court is not excluding these entries even though they are inconsistent because they only involve a single task.  However, the Court shall only permit recovery of 2 hours/day, not the time noted in the parentheticals.

Karolle prior accusation of block billing[4] compels the Court, in its discretion, to exclude said entries. Based on the number of conflicting entries, it is clear that this is more than an isolated clerical error. However, the Court is left to speculate about the basis for the inconsistencies because Mr. Ho has not explained why the cumulative totals for the itemized descriptions conflict by minutes, and even hours, in such a significant number of entries.[5]   Indeed, the Court has to wonder why Mr. Ho's invoices initially indicated that he expended a certain amount of time in a day, but now that he has gone back to itemize his time, there are such significant discrepancies between the total time billed for a particular day and the

---

[4]   Prior to the entry of the FOFCOL, Courter submitted a motion for attorneys' fees and costs.   Doc. No. 65.   Notwithstanding the fact that the Court denied the motion as premature the day after it was filed, Karolle filed an opposition.   Courter submitted the present declaration with revised time sheets, in part to address arguments raised by Karolle in his prior opposition.

[5]   Most of the cumulative totals are higher than the daily time billed, but some are less than the daily time billed.

cumulative total of the time purportedly spent on each task within that day.

In total, 236.9 hours fall under this category and must be deducted from Courter's fee request.  While this may seem harsh, the Court again stresses that it is Courter's burden to establish the reasonableness of his fee request.  The inconsistencies highlighted above cannot be ignored, and the Court will not engage in speculation to construe the same in Courter's favor.[6]

b.  Clerical or Ministerial Tasks

Some of Mr. Ho's time entries reflect billing for clerical/ministerial work, and must be reduced

---

[6] The Court has considered the possibility that in the case of the cumulative totals that exceeded the time billed, Mr. Ho expended the claimed amounts of time (as reflected in the itemized time in the descriptions), but elected to bill a lesser amount. But again, that would require the Court to engage in speculation.  Courter had ample opportunity to explain the discrepancies, but failed to adequately do so.  Mr. Ho stated that he discounted fees and did not bill Courter for all of the time spent working on this case. Ho Decl. at ¶ 38.  But he did not state that the inconsistent entries reflected billing discounts.  Even if that were true, it would not explain the converse situation where cumulative totals were less than the billed hours.

accordingly.  "[C]lerical or ministerial costs are part of an attorney's overhead and are reflected in the charged hourly rate."  Jeremiah B. v. Dep't of Educ., Civil No. 09-00262 DAE-LEK, 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010) (citing Sheffer v. Experian Info. Solutions, Inc., 290 F. Supp. 2d 538, 549 (E.D. Pa. 2003)).

The following is a list of tasks previously deemed clerical or ministerial in this district and therefore deemed non compensable:

> reviewing Court-generated notices; scheduling dates and deadlines; calendering dates and deadlines; notifying a client of dates and deadlines; preparing documents for filing with the Court; filing documents with the Court; informing a client that a document has been filed; personally delivering documents; bates stamping and other labeling of documents; maintaining and pulling files; copying, printing, and scanning documents; receiving, downloading, and emailing documents; and communicating with Court staff.[7]

Haw. Motorsports Inv., Inc. v. Clayton Group Servs., Inc., Civ. No. 09-00304 SOM-BMK, 2010 WL 4974867, *5

---

[7] This list is a sampling and is not exhaustive.

(D. Haw. Dec. 1, 2010), adopted by Haw. Motorsports
Inv., Inc. v. Clayton Group Servs., NC, Civ. No.
09-00304 SOM-BMK, 2010 WL 5395669 (D. Haw. Dec. 22,
2010) (also deeming clerical identification and
organization of exhibits); see also, e.g., Yamada v.
Weaver, Civil No. 10-00497 JMS-RLP, 2012 WL 6019363, at
*10 (D. Haw. Aug. 30, 2012), adopted in pertinent part
by Yamada v. Weaver, Civil No. 10-00497 JMS-RLP, 2012
WL 6019121 (D. Haw. Nov 30, 2012) (deeming clerical
work completed on table of authorities).

Here, Mr. Ho worked on clerical tasks such as
communicating with the court, reviewing court notices,
filing documents, and making copies of documents, and
expended 2.9 hours doing so.  Therefore, 2.9 hours
should be excluded from Courter's fee award.

c.  Insufficient Descriptions

Although Mr. Ho's time entries are in large
part sufficiently descriptive, a few tasks must be
excluded due to the inadequacy of the descriptions.
Local Rule 54.3(d)(2) requires that the "party seeking

an award of fees must describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated." Local Rule 54.3(d)(2). The rule further provides:

> [C]ounsel should be sensitive to matters giving rise to attorney-client privilege and attorney work product doctrine, but must nevertheless **furnish an adequate non-privileged description of the services in question.** If the time descriptions are incomplete, or if such descriptions fail to describe adequately the services rendered, the court may reduce the award accordingly. For example, the time entries for telephone conferences must include an identification of all participants and the reason for the call.

Local Rule 54.3(d)(2) (emphasis added). Here, a few of Mr. Ho's entries include tasks with insufficient descriptions, i.e. failing to provide the subject matter of an email. The Court accordingly reduces his hours by 1.5.

     d.  <u>Block Billing</u>

In addition to the foregoing reductions, the Court must reduce some of the requested hours due to

"block billing."[8]  "The term 'block billing' refers to
the time-keeping method by which each lawyer and legal
assistant enters the total daily time spent working on
a case, rather than itemizing the time expended on
specific tasks."  Robinson v. City of Edmond, 160 F.3d
1275, 1284 n.9 (10th Cir. 1998) (citations and
quotation marks omitted).  Block billed entries
generally fail to specify a breakdown of the time spent
on each task.

District courts have the authority to reduce
hours that are billed in block format because such a
billing style makes it difficult for courts to
ascertain how much time counsel expended on specified
tasks.  Welch v. Metro. Life Ins. Co., 480 F.3d 942,
948 (9th Cir. 2007).  See also id. (citing Role Models
Am., Inc. v. Brownlee, 353 F.3d 962, 971 (D.C. Cir.
2004) (reducing requested hours because counsel's

---

[8]  Karolle contends that Mr. Ho's block billed
entries should not be included in any fee award.
However, this argument is based on Mr. Ho's initially
submitted time sheets.  The revised time sheets address
many of Karolle's concerns.

22

practice of block billing "lump[ed] together multiple

tasks, making it impossible to evaluate their

reasonableness")); see also Hensley, 461 U.S. at 437

(holding that applicant should "maintain billing time

records in a manner that will enable a reviewing court

to identify distinct claims")).  Indeed, it is

challenging to assess the reasonableness of a time

entry when it includes several tasks.

Mr. Ho's use of block billing with respect to

certain time entries makes it difficult, if not

impossible, for the Court to assess the reasonableness

of the hours expended as to those entries.  Hence, the

Court imposes an across-the-board reduction of 10% as

to the entries that are in the "block billing" format.

Signature Homes of Haw., LLC v. Cascade Sur. and

Bonding, Inc., No. CV 06-00663 JMS-BMK, 2007 WL

2258725, at *3 (D. Haw. Aug. 3, 2007) (reducing block

billed hours by 20%).  Mr. Ho itemized most entries,

but several are block billed:  3/19/13, 3/20/13,

3/21/13, 4/23/13.  Applying the 10% reduction to these

23

entries, a reduction of 3.04 hours will be made.

        e.   Paralegal Tasks

        Finally, the Court will make reductions for tasks completed by Mr. Ho that are tasks normally completed by paralegals.  Because the Court ordinarily permits compensation for time reasonably expended by paralegals, the Court deems reasonable the hours expended, but will apply a paralegal hourly rate instead of Mr. Ho's $200.00 hourly rate.

        On 12/6/12, 12/7/12, and 12/10/13, Mr. Ho spent 7.9 hours preparing summaries, chronologies, and spreadsheets.  Courter's recovery with respect to these tasks should not be based on Mr. Ho's rate.  Consequently, in its final calculation, the Court shall apply an $85.00 paralegal hourly rate to the 7.9 hours.

        f. Karolle's Objections

        Most of Karolle's objections have been addressed above.  However, his one remaining objection challenges the time entries relating to legal research, which he believes is part of overhead.  This would be

true if Courter sought to recover legal research <u>costs</u> as a taxable cost.  Contrastingly, time entries for researching legal issues are compensable, so long as they are reasonable.  In this case, many of Mr. Ho's entries for legal research were disregarded because of issues of inconsistency.  But any reasonable time expended for legal research that was not excluded on other grounds, such as the research described in Mr. Ho's 4/19/13 entry, is compensable.

 3. <u>Total Fee Award</u>

 The Court finds that Courter has established that 230.36 hours were reasonably expended in connection with this action.  Of these 230.36 hours, 222.46 hours should be multiplied by Mr. Ho's $200.00 hourly rate, and 7.9 hours should be multiplied by an $89.00 paralegal hourly rate.  This results in a lodestar calculation of $45,163.50.  With $2,128.10 in general excise tax, Courter is entitled to $47,291.60.[9]

  [9]  The Court notes that although this is a significant reduction from the requested fees, it is an equitable result, particularly because Courter's submissions caused the Court to impose the sizeable

The Court therefore recommends that Judge Kobayashi award Courter **$47,291.60** in attorneys' fees.

<u>CONCLUSION</u>

In accordance with the foregoing, the Court HEREBY FINDS AND RECOMMENDS that the district court award Courter **$47,291.60** in attorneys' fees.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, September 16, 2013.



_____
Kevin S.C. Chang
United States Magistrate Judge

<u>COURTER V. KAROLLE, ET AL.</u>; CIVIL NO. 11-00736 LEK-KSC; FINDINGS AND RECOMMENDATION REGARDING ATTORNEYS' FEES

---

reductions.  Moreover, had Karolle pled a specific amount of damages, or established some amount of damages during the course of the litigation, or were there some basis for establishing a monetary value upon which to apply the 25% limit, the 25% limit should have applied because monetary liability was clearly at issue in the Counterclaim.  Based on the record before the Court, it seems unlikely that Karolle would have recovered $180,654.00 had he prevailed, which is the amount of damages that would have needed to be at issue to result in a $45,163.50 award, if the 25% was applied.  Thus, this Court's recommended award reasonably compensates Courter, and is consistent with HRS § 607-14's purpose.

26